UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

MICHELLE L. M.,                    )
                                   )
                Plaintiff,         )
                                   )
        v.                         )        No. 2:22-cv-00151-MKK-JMS
                                   )
KILOLO KIJAKAZI,                   )
                                   )
                Defendant.         )

## ORDER

Plaintiff Michelle L. M. requests judicial review of the denial by the

Commissioner of the Social Security Administration ("Commissioner") of her

application for Disability Insurance Benefits ("DIB") under Title II and

Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.

*See* 42 U.S.C. §§ 405(g), 1381 *et seq.* For the reasons set forth below, the Court

hereby **REVERSES** the ALJ's decision denying the Plaintiff benefits and

**REMANDS** this matter for further proceedings.

## I.    PROCEDURAL HISTORY

On August 29 and October 2, 2019, Michelle filed an application for DIB and

SSI. (Dkt. 8-2 at 11, R. 10). Michelle initially alleged disability resulting from

chronic vertigo, migraines, heart issues (including premature ventricular

contractions), neurological issues, and vestibular rehabilitation. (Dkt. 8-9 at 6, R.

237). The Social Security Administration ("SSA") denied Michelle's claims initially

on January 15, 2020, (Dkt. 8-4 at 24-25, R. 92-93), and on reconsideration on

October 27, 2020, (*id.* at 58-59, R. 126-27). Michelle filed a written request for a hearing, (Dkt. 8-5 at 46-48, R. 172-74), and on July 2, 2021, a hearing was held before Administrative Law Judge ("ALJ") Kevin Walker, where Michelle, her counsel, and vocational expert Brianne Lott all appeared telephonically, (Dkt. 8-2 at 11, R. 10). On August 19, 2021, ALJ Walker issued an unfavorable decision finding that Michelle was not disabled. (Dkt. 8-2 at 11-27, R. 10-26). On February 11, 2022, the Appeals Council denied Michelle's request for review, making the ALJ's decision final. (Dkt. 8-2 at 2-7, R. 1-6). Michelle now seeks judicial review of the ALJ's decision denying benefits. *See* 42 U.S.C. § 1383(c)(3).

## II.   STANDARD OF REVIEW

To qualify for disability, a claimant must be disabled within the meaning of the Social Security Act. To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To meet this definition, a claimant's impairments must be of such severity that she is not able to perform her previous work and, based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A).

2

The SSA has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 416.920(a).[1] The ALJ must consider whether:

> (1) the claimant is presently [un]employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves [her] unable to perform [her] past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005) (citation omitted). An affirmative answer to each step leads either to the next step or, at steps three and five, to a finding that the claimant is disabled. 20 C.F.R. § 416.920; *Briscoe*, 425 F.3d at 352. "If a claimant satisfies steps one and two, but not three, then he must satisfy step four." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). "Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Id.*; *see also* 20 C.F.R. § 416.920. A negative answer at any point, other than step three, terminates the inquiry and leads to a determination that the claimant is not disabled.

---

[1] The Code of Federal Regulations contains separate, parallel sections pertaining to disability benefits under the different titles of the Social Security Act, such as the one cited here that is applicable to supplemental security income benefits. Often, as is the case here, the parallel section pertaining to the other type of benefits—in this case disability insurance benefits—is verbatim and makes no substantive legal distinction based on the benefit type. *See* 20 C.F.R. § 404.1520(a).

3

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The RFC is an assessment of what a claimant can do despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). In making this assessment, the ALJ must consider all the relevant evidence in the record. *Id.* at 1001. The ALJ uses the RFC at step four to determine whether the claimant can perform his own past relevant work and if not, at step five to determine whether the claimant can perform other work in the national economy. *See* 20 C.F.R. § 416.920(a)(4)(iv)-(v).

The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352.  If the first four steps are met, the burden shifts to the Commissioner at step five. *Id.* The Commissioner must then establish that the claimant—in light of her age, education, job experience, and residual functional capacity to work—is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 416.920(g).

Judicial review of the Commissioner's denial of benefits is to determine whether it was supported by substantial evidence and free of legal error. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). This review is limited to determining whether the ALJ's decision adequately discusses the issues and is based on substantial evidence. Substantial evidence "means—and means only— such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation marks and citations omitted); *see also Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The standard demands more than a scintilla of evidentiary support but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). Thus, the issue before the Court is not whether Michelle is disabled, but, rather, whether the ALJ's findings were supported by substantial evidence and free of legal error. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

Under this administrative law substantial evidence standard, the Court reviews the ALJ's decision to determine if there is a logical and accurate bridge between the evidence and the conclusion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). In this substantial evidence determination, the Court must consider the entire administrative record but not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000), *as amended* (Dec. 13, 2000). "Nevertheless, [the Court must] conduct a 'critical review of the evidence' before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (citation omitted); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, he must build an "accurate and logical bridge from the evidence to his conclusion," *Clifford*, 227 F.3d at 872, articulating a

minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford*, 227 F.3d at 872.

### III.   BACKGROUND

#### A. Factual Background

Michelle was thirty-two years old on the date her application was filed. (Dkt. 8-4 at 13, R. 81).  She has a high school education. (Dkt. 8-3 at 9, R. 46). She has past relevant work history as an assistant manager and accounting clerk. (Dkt. 8-2 at 25-26, R. 24-25).

#### B. ALJ Decision

In determining whether Michelle qualified for benefits under the Act, the ALJ employed the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920(a) and concluded that Michelle was not disabled. (Dkt. 8-2 at 11-27, R. 10-26). At Step One, the ALJ found that Michelle had not engaged in substantial gainful activity since the alleged onset date of June 11, 2019. (*Id.* at 13, R. 12).

At Step Two, the ALJ found that Michelle had severe impairments of chronic vertigo/vestibular dysfunction; sinus tachycardia with premature complexes; and migraine headaches. (*Id.*). The ALJ also found that Michelle had non-severe medically determinable impairments of a vitamin D deficiency, asthma, anxiety,

6

depression, and post-traumatic stress disorder. (Dkt. 8-2 at 14-15, R. 13-14).  In making this finding, the ALJ considered the "paragraph B" criteria and concluded that Michelle had mild limitations in all four areas: understanding, remembering or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (*Id.* at 16-17, R. 15-16). The ALJ concluded that the evidence failed to establish that Michelle's cervicalgia/neck pain was a medically determinable impairment. (*Id.* at 14, R. 13).

At Step Three, the ALJ found that Michelle's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, specifically, Listings 2.07, 4.05, and 11.00. (Dkt. 8-2 at 18, R. 17).

After Step Three but before Step Four, the ALJ found that Michelle had the RFC to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), "except: occasionally lift and carry 20 pounds; frequently lift and carry 10 pounds; push/pull unlimited except for the weights indicated; stand or walk for up to six hours in an eight-hour workday; sit for up to six hours in an eight-hour workday; occasional climbing of ramps or stairs; never climbing ladders, ropes or scaffolds; occasionally balancing, stooping, kneeling, crouching, and crawling; no exposure to extreme vibration; occasional exposure to pulmonary irritants, including dusts, fumes, odors, and gases; no exposure to unprotected heights or hazardous machinery; and moderate noise exposure." (Dkt. 8-2 at 18-25, R. 17-24).

7

At Step Four, the ALJ concluded that Michelle is capable of performing her past relevant work as an assistant manager and as an accounting clerk. (Dkt. 8-2 at 25-27, R. 24-26). In the alternative, the ALJ found that, considering Michelle's age, education, work experience, and RFC, she can perform jobs that exist in significant numbers in the national economy. (*Id.* at 26-27, R. 25-26). Thus, the ALJ concluded that Michelle was not disabled. (*Id.* at 27, R. 26).

## IV. ANALYSIS

Michelle presented several arguments, but the Court only addresses those necessary to resolve this appeal. Plaintiff argues that this matter should be remanded because the ALJ (1) failed to conduct an adequate Listings analysis and (2) conducted a faulty analysis related to her migraines. (Dkt. 12).

### A. Listing Determination

Regarding the Step Three determination, Michelle argues that the ALJ erred by failing to sufficiently analyze whether Plaintiff's headaches medically equaled the requirements of Listing 11.02. (Dkt. 12 at 16-18; Dkt. 14 at 11-13). In response, the Commissioner maintains that the ALJ's findings were supported by substantial evidence. (Dkt. 13 at 18-23).

Under Step Three of the sequential evaluation process, if a claimant has an impairment that meets or medically equals the criteria of an impairment found in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumptively disabled and qualifies for benefits. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015); *Sims v. Barnhart*, 309 F.3d 424, 428 (7th Cir. 2002).

The Listings specify the criteria for impairments that are considered presumptively disabling. *Minnick*, 775 F.3d at 935 (citing 20 C.F.R. § 404.1525(a)). A claimant may also demonstrate presumptive disability by showing that her impairments are accompanied by symptoms that are equal in severity to those described in a specific listing. *Id.* (citing 20 C.F.R. § 404.1526).

It is the claimant's burden to prove that her condition meets or equals a listed impairment. *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012); *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). To meet or equal a listed impairment, the claimant must "meet all of the criteria for a listed impairment or 'present medical findings equal in severity to *all* the criteria for the one more similar listed impairment.'" *Sims*, 309 F.3d at 428 (citation omitted; emphasis in original); *see also Ribaudo*, 458 F.3d at 583. Medical equivalence is based upon medical findings and the opinion of "one or more medical or psychological consultants designated by the Commissioner." 20 C.F.R § 404.1526(c); *see also Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue.").

Social Security Ruling 19-4p addresses primary headache disorders (including migraines), and indicates that they should be evaluated under Listing 11.02, which requires the following, in relevant part:

> B. Dyscognitive seizures (see 11.00H1b), occurring at least once a week for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C).
>
> …

9

D. Dyscognitive seizures (see 11.00H1b), occurring at least once every 2 weeks for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:

> 1. Physical functioning (see 11.00G3a); or
> 2. Understanding, remembering, or applying information (see 11.00G3b(i)); or
> 3. Interacting with others (see 11.00G3b(ii)); or
> 4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
> 5. Adapting or managing oneself (see 11.00G3b(iv)).

*Disability Evaluation Under Social Security: 11.00 Neurological Listings*,

https://www.ssa.gov/disability/professionals/bluebook/11.00-Neurological-Adult.htm#11_02 (last visited May 25, 2023). SSR 19-4p also provides the following guidance on considering medical equivalence of headaches to Listing 11.02:

Paragraph B of listing 11.02 requires dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider: a detailed description from an AMS [cceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

Paragraph D of listing 11.02 requires dyscognitive seizures occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment, and marked limitation in one area of functioning. To evaluate whether a

10

> primary headache disorder is equal in severity and duration to
> the criteria in 11.02D, we consider the same factors we consider
> for 11.02B and we also consider whether the overall effects of the
> primary headache disorder on functioning results in marked
> limitation in: physical functioning; understanding, remembering,
> or applying information; interacting with others; concentrating,
> persisting, or maintaining pace; or adapting or managing oneself.

SSR 19-4p, § 8, 2019 WL 4169635 (S.S.A. Aug. 26, 2019). As noted in SSR 19-4p,

there is no listing for headaches or migraines, so the SSA "routinely considers these

impairments under the criteria for Listing 11.03," which is now 11.02.[2] *Cooper v.

Berryhill*, 244 F. Supp. 3d 824, 828 (S.D. Ind. 2017). "A claimant may therefore

demonstrate equivalence to Listing [11.02] by showing that h[er] migraines cause

functional impairments equivalent to those described in the Listing." *Id.* at 828-29.

"Courts analyzing migraine headaches under listing 11.02 have found that

equivalence can be shown where migraines occur at these time intervals despite

prescribed treatment. *See Snow v. Berryhill*, No. 3:18-CV-434 JD, 2019 WL

1873551, at *4, (N.D. Ind. Apr. 26, 2019) (reversing and remanding the ALJ's

perfunctory listing 11.02 analysis because there was evidence that the plaintiff

experienced migraine headaches fifteen days of every month, her medications

generally did not help, her migraines were exacerbated by noise, she could only

obtain relief by trying to sleep, and she received injections and nerve blocks for her

headaches)." *Corey Z. v. Saul*, No. 18 CV 50219, 2019 WL 6327427, at *4 (N.D. Ill.

---

[2] The rule that replaced Listing 11.03 with Listing 11.02 took effect on September 29, 2016, and
applies to all applications that were pending on or after that date. *Woods v. Saul*, No. 19-CV-1586-
SCD, 2020 WL 6111636, at *3 n.2 (E.D. Wis. Oct. 16, 2020).

Nov. 26, 2019); *see also Kaiser v. Colvin*, No. 1:14-cv-01480-SEB-MJD, 2015 WL

4138263, at *6-7 (S.D. Ind. July 7, 2015) (reversing and remanding for similar

reasons, finding that Plaintiff experienced chronic migraine headaches once or twice

a week lasting up to three days, she tried "a wide array of prescription medications

to resolve her headaches," her migraines were accompanied by pounding,

photophobia, and phonophobia, and she explained that she goes into a room to lie

down until the pain passed); *Kwitschau v. Colvin,* No. 11 C 6900, 2013 WL 6049072,

at *3 (N.D. Ill. Nov. 14, 2013) ("In order to meet that Listing, Claimant must suffer

from more than one medically severe migraine headache per week despite at least

three months of prescribed treatment").

Here, the ALJ's listing analysis is barebones, at best. As an initial matter, he

never indicated that he considered SSR 19-4p. (R. 8-2 at 18, R. 17). He did

acknowledge that "there is not a specific listing for this impairment," and noted that

he considered the effects of Plaintiff's migraines "under the criteria for all

neurological system disorders, including seizures." (Dkt. 8-2 at 18; R. 17). Even

assuming this statement enables one to conclude that the ALJ considered Listing

11.02, however, the analysis that follows is cursory and undeveloped: "the record

fails to demonstrate the claimant experienced migraine headaches of a nature,

duration, frequency, and/or severity that would meet or medically equal the degree

of functional limitations required by listings for neurological disorders." (*Id.*). This

is insufficient, even when reading the ALJ's opinion as a whole. *See Corey Z.*, 2019

WL 6327427, at *3 ("[i]n considering whether a claimant's condition meets or equals

a listed impairment, an ALJ must discuss the listing by name and offer more than perfunctory analysis of the listing.") (quoting *Minnick*, 775 F.3d at 935).

The Commissioner maintains that the record does not contain "at least one of three types of evidence *required* to prove listing-level equivalency." (Dkt. 13 at 19 (citing SSR 17-2p) (emphasis in original)). The Commissioner further argues that Plaintiff failed to meet her burden of showing that she medically equaled Listing 11.02 because she provided "no objective medical description of a typical headache," (*id.* at 20), but rather could only point to her own subjective statements as to the severity and frequency of her migraines, (*id.* at 20-21). Although SSR 17-2p addresses generally how ALJs must evaluate listing-level equivalency, SSR 19-4p provides a specific description of the evaluation process for headache disorders under Listing 11.02, which involves consideration of a detailed description from an AMS of a typical headache event, including all associated phenomena; the frequency of headache events; adherence to prescribed treatment; side effects of treatment; and limitations in functioning associated with the headache disorder or effects of treatment, such as interference with activity during the day. SSR 19-4p, § 8. The Ruling does not describe any one factor as determinative. *Id.*

The Court must acknowledge that migraines represent a particularly challenging impairment that regularly arises in disability claims. *See Krevs v. Saul*, No. 18-CV-1742, 2020 WL 58068, at *2, (E.D. Wis. Jan. 6, 2020). "The impairment itself is not objectively verifiable, much less the frequency and severity of the resulting symptoms." *Id.*; *see also Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014)

13

("Doctors use MRIs *to rule out other possible causes of headache*—such as a tumor—meaning that an unremarkable MRI is completely consistent with a migraine diagnosis.") (emphasis in original); SSR 19-4p, § 2. "Thus, determining the nature and extent of a claimant's impairment rests heavily on an assessment of the claimant's subjective symptoms, including how her symptoms respond to treatment. *Gould v. Kijakazi*, No. 21-CV-308, 2022 WL 541511, at *3 (E.D. Wis. Feb. 23, 2022) (citing *Overton v. Saul*, 802 F. App'x 190, 192 (7th Cir. 2020)). "Moreover, migraines are highly variable. Both the frequency and severity of a claimant's migraines may change over time, and migraines may even abate for lengthy periods." *Id.* When a claimant is not suffering from a migraine, her functioning may be wholly unimpaired. *Krevs*, 2020 WL 58068, at *2.

Additionally, Plaintiff lists the medical evidence from her testimony and in the medical records that demonstrate her headaches were severe, with symptoms such as photophobia and sonophobia. (Dkt. 12 at 8-11). Plaintiff further noted:

> The record reflects a diagnosis of **intractable migraine** as far back as October 2019. (Dkt. 8-12 at p. 31-33, R. 376-78.) Plaintiff was prescribed Topiramate and Rizatriptan, and the dosages were regularly adjusted in an effort to control Plaintiff's migraines. (*See* Argument (I), *supra.*) Despite such treatment, Plaintiff's migraines fluctuated in frequency and severity, with the most recent evidence showing *near-daily* headaches, some of which were severe. (Id.) Plaintiff testified that she had recently started Aimovig injections, but had not yet noticed an improvement in her migraines, which occurred *2 to 3 days a week*. (Dkt. 8-3 at p. 17, 20-21, 23, 26, R. 54, 57-58, 60, 63.) Plaintiff's abortive medications "knock down" her migraines simply to the point where she *can get out of bed*. (Id.) Finally, Plaintiff's days largely consist of *avoiding* migraine triggers, napping, and staying in a dark room with the lights off. (Dkt. 8-3 at p. 17, 20-21, 23, 26, R. 54, 57-58, 60, 63; Dkt. 8-9 at p. 17-25, 50-58, R. 248-56, 281-89.)

(Dkt. 12 at 17-18 (emphasis in original)). Plaintiff only needed to show that she suffered one medically severe headache per week for three months despite prescribed treatment. The evidence presented could medically equal Listing 11.02; thus, the ALJ's failure to properly consider medical equivalence is not harmless error and this matter is remanded for further proceedings, so that the ALJ can properly assess whether Plaintiff meets or medically equals Listing 11.02.

## B. Migraines

On a similar note, the Plaintiff argues throughout her brief that the ALJ erred in his analysis of her migraine headaches, both in assessing her subjective symptoms according to SSR 16-3p and in assigning her RFC. Specifically, Plaintiff asserts that the ALJ improperly discounted her statements about the frequency and severity of her migraines and failed to properly account for her symptoms in the RFC, notably by not including absenteeism or off-task limitations.

### i. *Subjective Symptoms*

Plaintiff first contends that the ALJ erred in assessing her subjective statements about the frequency and severity of her symptoms. The Court agrees that the ALJ failed to adequately explain and support his subjective symptom evaluation and will address several, but not all, of the ALJ's errors.

In arriving at his determination of non-disability, the ALJ evaluated Michelle's subjective symptoms pursuant to 20 C.F.R. § 416.929 and SSR 16-3p. (Dkt. 8-2 at 18-25, R. 17-24). "In evaluating a claimant's credibility, the ALJ must

15

comply with SSR 16-3p and articulate the reasons for the credibility determination." *Karen A. R. v. Saul*, No. 1:18-cv-2024-DLP-SEB, 2019 WL 3369283, at \*5 (S.D. Ind. July 26, 2019). SSR 16-3p describes a two-step process for evaluating a claimant's subjective symptoms.[3]  First, the ALJ must determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms. SSR 16-3p, 2017 WL 5180304, at \*3 (S.S.A. Oct. 25, 2017). Second, the ALJ must evaluate the intensity and persistence of a claimant's symptoms, such as pain, and determine the extent to which they limit her ability to perform work-related activities. *Id.* at \*3-4.

A court will overturn an ALJ's evaluation of a claimant's subjective symptom allegations only if it is "patently wrong." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (citation omitted). To satisfy this standard, the ALJ must justify his subjective symptom evaluation with "specific reasons supported by the record," *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013), and build an accurate and logical bridge between the evidence and conclusion, *Villano,* 556 F.3d at 562. Without this discussion, the Court is unable to determine whether the ALJ "reached his decision in a rational manner, logically based on h[is] specific findings and the evidence in the record." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014)

---

[3] SSR 16-3p became effective on March 28, 2016, (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at \*13, replacing SSR 96-7p, and requires an ALJ to assess a claimant's subjective symptoms rather than assessing her "credibility." By eliminating the term "credibility," the SSA makes clear that the "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304, at \*2. The Seventh Circuit has explained that the "change in wording is meant to clarify that administrative law judges are not in the business of impeaching claimants' character." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016).

(quoting *McKinzy v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011)); *see also* SSR 16-3p, at *9. An ALJ's evaluation is "patently wrong" and subject to remand when the ALJ's finding lacks any explanation or support. *Murphy*, 759 F.3d at 816; *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008); *Cassandra S. v. Berryhill*, No. 1:18-cv-0328-JRS-MPB, 2019 WL 1055097, at *5 (S.D. Ind. Mar. 6, 2019).

At step two of the Rule 16-3p analysis, the ALJ considers the claimant's subjective symptom allegations in light of the claimant's daily activities; the location, duration, frequency, and intensity of pain and limiting effects of other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; treatment other than medication for relief of pain; and other measures taken to relieve pain. 20 C.F.R. § 416.929(c)(3).

When assessing a claimant's subjective symptoms, ALJs are directed to "consider the consistency of the individual's own statements. To do so, [they] will compare statements an individual makes in connection with the individual's claim for disability benefits with any existing statements the individual made under other circumstances." SSR 16-3p, 2017 WL 5180304, at *8. The ruling also explains that "[p]ersistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent." *Id.* at *9.

With these principles in mind, the Court now turns to the ALJ's subjective symptom analysis in this case. First, the ALJ relies on Plaintiff's "normal" exam

17

findings (such as intact gait and strength and normal eyes and ears) and the lack of objective medical imaging to discount Plaintiff's allegations regarding her migraine symptoms. (Dkt. 8-2 at 19-24, R. 18-23). Notably, the ALJ points to Plaintiff's lack of certain migraine-associated symptoms when at office visits and the lack of objective verification of her migraine symptoms. (*Id.*). Even if Plaintiff had none of her migraine symptoms during her medical exams, this may only suggest that she did not have a migraine at the time of the appointment, rather than revealing anything about the frequency or severity of her migraine symptoms. *See Christina B. v. Kijakazi*, No. 1:20-cv-01936-DLP-JRS, 2022 WL 178606, at *7 (S.D. Ind. Jan. 20, 2022) (citing *Moon v. Colvin*, 763 F.3d at 721).

Perhaps most importantly, no medical source opined that normal mental or physical examinations were inconsistent with complaints of severe headache symptoms. *See Harris v. Kijakazi*, No. 1:21-cv-01676-RLY-DLP, 2022 WL 4591452, at *3 (S.D. Ind. Sept. 30, 2022) (ALJ's conclusion unsupported where no doctor suggested "relatively normal clinical findings" were inconsistent with severe migraine symptoms); *Suhsen v. Saul*, No. 20-CV-519-JDP, 2021 WL 1921434, at *5 (W.D. Wis. May 13, 2021) (same); *Chavez v. Colvin*, No. 1:14-cv-192, 2015 WL 1733767, at *11 (N.D. Ind. Apr. 15, 2015) (same). As in *Christina B.*, "[t]he ALJ's reliance on objective medical imaging and neurological testing is misplaced in this case, largely because her own treating physicians accepted her symptom allegations and treated her for those same symptoms. Thus, the ALJ's conclusion regarding the importance of normal objective medical evidence [or the absence thereof] is not

supported by the record." 2022 WL 178606, at *8. And, as noted above, migraines and their symptoms are not subject to objective verification. *Moon*, 763 F.3d at 722.

Second, although the reviewing doctor of Plaintiff's brain MRI noted that the hyperintensity abnormality on the scan "can be seen in patients with migraines," the ALJ discounted the results of the MRI because "there was no abnormal enhancement post-contrast and no evidence of an acute infarct or mass." (Dkt. 8-2 at 19-20, R. 18-19). No doctor in the record opined that Plaintiff's results could only be corroborated by the existence of an acute infarct or mass or that the actual reviewing physician's reading of the MRI was undermined by the other "normal findings" – rather, it appears that the ALJ succumbed to the temptation to improperly "play doctor" when interpreting the results of this brain MRI. *See Gary R. v. Kijakazi*, No. 20 C 6109, 2022 WL 4607581, at *16 (N.D. Ill. Sept. 30, 2022) ("ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves.") (quoting *Moon*, 763 F.3d at 722).

Next, the ALJ stated multiple times that medical sources indicated that smoking cigarettes/nicotine may be the cause of some of Michelle's vestibular abnormalities and tachycardia. (Dkt. 8-2 at 22, 24, R. 21, 23). However, those same records also indicated that Plaintiff's vestibular abnormalities could also be caused by her migraines. (Dkt. 8-12 at 19, 31-33, R. 364, 376-78). Thus, it is not clear why the ALJ credited one possible explanation for Plaintiff's symptoms (the likely non-

disabling one) over the other, and the ALJ provides no justification in his opinion on that point.

As it stands, the ALJ provides several reasons for discounting Plaintiff's subjective symptoms related to her migraines, including her headaches, pain, sensitivity to light and sound, nausea, and fatigue, but the ALJ's stated reasons were insufficient and, at times, inaccurate or misleading. Accordingly, the Court finds that the ALJ's evaluation of Plaintiff's migraine symptom allegations is lacking and remand is required on this basis as well.

### ii.   *Absences and Off-Task Time*

Although Plaintiff presented considerable evidence of the effects of her migraines, both during and after having the headaches, all of which could potentially result in Plaintiff needing additional time off-task or absences from work, the ALJ did not include either limitation in the RFC. At the hearing, however, the ALJ solicited from the vocational expert her opinion concerning Plaintiff's off-task time and absences, which indicates that the ALJ did consider this issue. (Dkt. 8-3 at 30, R. 67); *see also Jeffrey L. G. v. Kijakazi*, No. 2:20-cv-0583-DLP-JRS, 2022 WL 3681817, at *6 (S.D. Ind. Aug. 25, 2022) (ALJ's questioning of vocational expert on off-task time indicates ALJ's consideration of issue for RFC, but error occurred when ALJ included no analysis of off-task time in opinion); *see also Diaz v. Berryhill*, No. 2:17-cv-314, 2018 WL 4627218, at *8 (N.D. Ind. Sept. 27, 2018) (same). Moreover, as noted previously, migraines are so variable that claimants could be symptom-free and unimpaired for some time, but then suffer

migraines so severe that they are required to miss work. *Dennie K. K. v. Comm'r of Soc. Sec.*, No. 21-CV-01188-SPM, 2022 WL 17830498, at *4 (S.D. Ill. Dec. 21, 2022). If a claimant suffers migraines that are severe enough to force her to miss work, just two migraines a month could be disabling. (Dkt. 8-3 at 30, R. 67 (vocational expert testimony that missing work more than once per month would preclude work)). For this reason, it is generally important for an ALJ to include an absenteeism rate when determining the RFC of a claimant who suffers from migraines. *See Moore v. Colvin*, 743 F.3d 1118, 1127 (7th Cir. 2014).

"When an ALJ accepts that a claimant suffers from migraines but concludes that she is not disabled, there are generally two possible explanations. Either the ALJ found that the claimant did not suffer migraines at a disabling frequency, or the migraines were not of a disabling severity (*i.e.*, the ALJ found that the claimant could work while suffering a migraine)." *Gould*, 2022 WL 541511, at *3; *see also Krevs*, 2020 WL 58068, at *2 ("Thus, to assess whether a claimant's migraines preclude substantial gainful activity, it is necessary to assess both how often the claimant suffers migraines and how severe those migraines are.").

In this case, the ALJ asked the vocational expert about potential employers' acceptance of absenteeism or off-task time at the hearing, (Dkt. 8-3 at 30, R. 67), but then included only a barebones discussion of absenteeism and off-task time in his opinion. (Dkt. 8-2 at 23-24, R. 22-23). As noted previously, the record evidence indicates and Michelle acknowledges that her treatment plan reduced the frequency of her migraine headaches, but that she still suffered migraines at least 1 to 2 times

per week. Since Michelle stated that the only things that help manage her migraines once they begin are taking her medication and going into a dark room for several hours, it is unclear how the ALJ concluded that Michelle would not miss more than one day of work per month or would require no off-task time (particularly given the flaws in the subjective symptom analysis). The ALJ may well have decided that neither limitation was warranted based on the record at hand, but this Court is unable to ascertain whether the ALJ adequately considered these two potential RFC limitations. Without any actual discussion, the Court is prevented from conducting any sort of meaningful review, *see Lothridge v. Saul*, 984 F.3d 1227, 1234 (7th Cir. 2021) (finding remand necessary where "ALJ neither cited evidence that [claimant] could meet the[] [attendance] benchmarks nor addressed the evidence that she could not"), a problem which is magnified by the ALJ's use of imprecise language, (*see, e.g.*, Dkt. 8-2 at 23, R. 22 ("the record fails to demonstrate the claimant experience migraines/headaches of a nature, duration, severity, *and/or* frequency that would support a work-related limitation allowing the claimant to lie down during the workday or prevent her from performing sustained work activity") (emphasis added)). Accordingly, the undersigned concludes that ALJ's consideration of Michelle's migraines is lacking, and remand is required to further address these issues.

### C. Remaining Issues

Michelle also makes other arguments related to the ALJ's treatment of her mental health conditions, assessment of third-party statements and of her own

22

subjective statements, and the ALJ's overall assessment of the RFC. Given that the Court has already determined the ALJ's consideration of Michelle's migraines to be inadequate, an issue which also touches on and likely impacts the other aspects of the ALJ's analysis, the Court declines to consider these remaining issues. Instead, the Court orders the ALJ to reconsider his subjective symptom and RFC analyses after properly reviewing the evidence related to Michelle's migraine headaches.

## V.   CONCLUSION

For the reasons detailed herein, the Court **REVERSES** the ALJ's decision denying the Plaintiff benefits and **REMANDS** this matter for further proceedings. Final judgment will issue accordingly.

So ORDERED.

Date:  06 June 2023

M. Kendra Klump
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email.

23